Kern, Leila R., J.

INTRODUCTION

In Phase I of this litigation, the plaintiff utility companies seek to obtain excess liability coverage from the defendant insurers in connection with the clean-up of environmental contamination at the sites of former manufactured gas plants in Lynn, Salem and Malden. This matter is before the court on the plaintiffs’ motion for partial summary judgment pursuant to Mass.R.Civ.P. 56 on “allocation” and “settlement credits” and the defendants’ cross motion for summary judgment on those issues. For the reasons discussed below, the plaintiffs’ motion for partial summary judgment on “allocation” and “settlement credits” is ALLOWED, and the defendants’ cross motion on those issues is DENIED.

DISCUSSION

NEES held primary comprehensive general liability insurance from Aetna (now Travelers) covering the period January 1, 1948 through January 1, 1952. NEES held primary CGL coverage from Travelers during the period January 1, 1952 through January 1, 1961, and the period January 1, 1961 through January 1, 1973. The per-occurrence limits available under the NEES primary insurance program total $35.5 million. On April 19, 2000, plaintiffs settled their claims against Travelers under the policies issued between January 1, 1955 and January 1, 1970 for $14.5 million. The settlement extinguishes the plaintiffs’ rights to seek coverage under the Travelers policies issued between January 1, 1948 and January 1, 1955.
The plaintiffs also entered into confidential settlement agreements with excess insurers Commercial Union and American Home Assurance Co, and received $15 million from excess insurer Associated Electric and Gas Ins. Services Ltd. in a settlement effective April 21,1997.
NEES held numerous excess liability insurance policies from Certain London Market Insurers (“London”). NEES also held several first-layer excess liability insurance policies from Home and First State. Under the London and Home policies, the insurer agreed to indemnify NEES for the “ultimate net loss . . . which [NEES] may sustain . . . because of injury to or destruction of property.” The term “ultimate net loss” is defined, in pertinent part, as “the total sum which the Assured . . . becomes obligated to pay by reason of personal injury or property damage claims, either through adjudication or compromise and shall also include ... all sums paid ... for litigation, settlement, adjustment and investigation of claims and suits which are paid as a consequence of any occurrence covered hereunder . . .” Under the First State policies, the insurer agreed to indemnify NEES for “all sums which [NEES] shall be obligated to pay by reason of the liability imposed upon [NEES] by law, or assumed under contract or agreement by the Named Insured for damages, direct or consequential and expenses on account of . . . Property Damage . . . caused by or arising out of each occurrence ...” Each of the London policies contains an “other insurance” provision which states:
If other valid and collectible insurance with any other insurer is available to the Assured covering a loss also covered by this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this policy subject to the terms, conditions and limitations of other insurance.
The Environmental Response Costs (“ERC”) Fund was created pursuant to a 1993 agreement between NEES and the Massachusetts Department of Public Utilities. The purpose of the ERC Fund is to reimburse NEES its prudently incurred response costs for hazardous waste sites located in Massachusetts. The ERC Fund is replenished annually by $3 million in ratepayer contributions. The ERC Fund has a $55.7 million balance, which is net of $55.5 million already reimbursed to NEES since the fund’s inception.
The first issue raised by these cross motions is the extent of each insurer’s indemnity obligation under a triggered policy. The defendants argue for a time-on-the risk, pro rata allocation under which the total liability for the property damage at each site is allocated equally into each annual period from the first year of operation of the gas plant until the year when property damage ceased, with each policy in each triggered year of coverage responsible only for the share of liability apportioned to that year. However, none of the policies at issue limit the insurer’s liability to only the property damage that occurred within the policy period, or otherwise provide for pro rata allocation of liability. Where a policy promises to pay the insured “all sums,” and “multiple policies are triggered to pay the same loss, each policy provides indemnity for the insured’s entire liability, and each insurer is jointly and severally liable for the entire claim,” subject to the right to obtain contribution from other insurers. Rubenstein v. Royal Ins. Co. of America, 44 Mass.App.Ct. 842, 852 (1998). Accord Chicago Bridge & Iron Co. v. Certain Underwriters at Lloyd’s, London, 59 Mass.App.Ct. 646, 654-56 (2003), rev. den., 441 Mass. 1101 (2004) (applying Illinois law consistently *195 with Rubenstein). But see GenCorp. Inc. v. AIU Ins. Co., 297 F.Sup.2d 995, 1007 (N.D. Ohio 2003), aff'd, 2005 Fed.App. 0575N (6th Cir.), reh’g den. en banc (Oct. 3, 2005) (refusing to impose joint and several liability on excess insurers for “all sums” where the insured settled with its primary insurers and the settlements eliminated the possibility of contribution among excess insurers).
Given that the insurers of triggered policies are jointly and severally liable under the “all sums” approach,' the remaining issue raised by the cross motions is the extent of the credit to be given the defendants for the settlement amounts already received by the plaintiffs from other insurers. An insured should not be permitted a double recovery of cumulative indemnity damages. See Rubenstein v. Royal Ins. Co. of America, 44 Mass.App.Ct. at 856. This court declines the defendants’ invitation to apply the “apportioned share set-off’ rule fashioned by the Third Circuit in Koppers Co., Inc. v. Aetna Cas. & Sur. Co., 98 F.3d 1440, 1453-55 (3d Cir. 1996), because that decision was based on not only general principles of indemnity but also Pennsylvania’s use of an apportioned share set-off in the context of joint and several tort liability. In Massachusetts, a non-settling tortfeasor is entitled to only a pro tanto credit in the amount of the actual settlement received by the injured party. See G.L.c. 231B, §4. Similarly, providing the excess insurers with a pro tanto credit for any settlement amounts received by the plaintiffs attributable to a particular site is sufficient to prevent a double recoveiy.
Finally, this court is not persuaded by the defendants’ argument that the plaintiffs have no “ultimate net loss” under any of the policies because of the availability of reimbursement by the ERC Fund. This alternative source of funding for cleanup costs is irrelevant to the insurers’ contractual obligation of indemnity.

ORDER

For the foregoing reasons, it is hereby ORDERED that the plaintiffs’ motion for partial summary judgment on “allocation” and “settlement credits” be ALLOWED and that the defendants’ cross motion for summary judgment on “allocation” and “settlement credits” be DENIED.